Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JOSÉ A. VIVALDI OLIVER, MARIE A. RAMÍREZ KAUFFMAN<br>Parte Recurrida<br><br>v.<br><br>**SISTEMA UNIVERSITARIO ANA G. MÉNDEZ INCORPORADO**<br>**(Parte Peticionaria)**<br><br>ASEGURADORAS A, B y C, CORPORACIONES X, Y y Z Y OTROS | KLCE202500634 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil Núm.: SJ2025CV01817<br><br>Sobre: Procedimiento Sumario Bajo la Ley Núm. 2 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 26 de junio de 2025.

Comparece la parte peticionaria, Sistema Universitario Ana G. Méndez (SUAGM o parte peticionaria), y solicita que revoquemos la *Resolución* emitida y notificada el 8 de mayo de 2025, por el Tribunal de Primera Instancia, Sala de San Juan. Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación* presentada por SUAGM y ordenó la conversión del procedimiento a uno ordinario.

Examinado el recurso y la oposición de la parte recurrida, resolvemos denegar la expedición del auto de *certiorari*.

## I.

El 6 de marzo de 2025, los recurridos, el Dr. José A. Vivaldi Oliver (Dr. Vivaldi) y la Sra. Marie A. Ramírez Kauffman (Sra. Ramírez), incoaron una querella[1] contra SUAGM sobre reclamación laboral al amparo de la *Ley de Procedimiento Sumario de*

---

[1] Apéndice del recurso, págs. 3-17.

*Reclamaciones Laborales[2],* incumplimiento de contrato laboral, represalias y daños y perjuicios. Los recurridos expusieron que estuvieron casados por 25 años y que desde el año 2011, la Sra. Ramírez es la pareja consensual del Dr. Vivaldi. En la querella, los recurridos alegaron que el 28 de agosto de 2019, SUAGM le cursó una carta al Dr. Vivaldi en la que le ofreció el puesto de Decano de la Escuela de Medicina Dental de la Universidad Ana G. Méndez, Recinto de Gurabo y le extendió un nombramiento de facultad como catedrático. El 10 de septiembre de 2019, el Dr. Vivaldi y SUAGM suscribieron un contrato titulado *Contrato de Decano.* Los recurridos expresaron que el 11 de septiembre de 2019, el Dr. Vivaldi que comenzó a trabajar con SUAGM en calidad de Decano y Catedrático de la Escuela de Odontología en dicha institución. Expusieron que como parte de sus funciones, el Dr. Vivaldi era el responsable de desarrollar, administrar y obtener la acreditación de la Escuela de Medicina Dental (Odontología) de SUAGM. Alegaron que el 30 de septiembre de 2021, se sometió la solicitud de acreditación inicial a la Comisión Dental Acreditadora (CODA por sus siglas en inglés) y que el 1 de marzo de 2024, CODA otorgó por escrito la categoría de *Initial Accreditation* al programa. No obstante, en el mismo escrito, CODA realizó varios señalamientos que SUAGM debía atender y someter en o antes del 15 de mayo de 2024. Los recurridos arguyeron que el Dr. Vivaldi dirigió una carta al Presidente SUAGM, el Sr. José F. Méndez Méndez en la que solicitó un diálogo para atender ciertos asuntos sobre el proceso de acreditación de CODA y las recomendaciones y requisitos que debían atenderse antes del 15 de mayo de 2024. Alegaron que el 14 de mayo de 2024, el Dr. Vivaldi recibió una copia del informe requerido por CODA para su revisión y firma. Al día siguiente, este

---

[2] Ley Núm. 2-1961, según enmendada.

envió un correo electrónico a varias personas en las que señaló fallas a la política de integridad de CODA porque la información contenida en el informe no se ajustaba a las representaciones hechas por SUAGM a los representantes de CODA cuando visitaron las instalaciones. El 15 de mayo de 2024, la Vicepresidenta de Recursos Humanos le entregó una carta al Dr. Vivaldi en la que daban por terminado el contrato conforme a la cláusula sexta del mismo[3], efectivo en esa misma fecha. Añadieron que el Dr. Vivaldi fue presionado a firmar un relevo y acuerdo y que éste no accedió a firmar el mismo, por lo que fue escoltado por guardias de seguridad fuera de los predios de SUAGM de manera abrupta, que intervinieron con sus pertenencias personales, las cuales empacaron sin su consentimiento, causando un espectáculo visible y ante estudiantes, dentistas, y compañeros de trabajo allí presentes causando gran humillación al Dr. Vivaldi.

Por lo anterior, los recurridos reclamaron que las actuaciones de SUAGM le ocasionaron daños severos. Los recurridos reiteraron que estuvieron casados por veinticinco (25) años y que desde el 2011, la Sra. Ramírez es su pareja consensual. Por tanto, entre las causas de acción instadas, estos incluyeron una causa de acción de daños y perjuicios contra SUAGM.

En lo pertinente a la controversia ante nuestra consideración, la Sra. Ramírez alegó que sufrió angustias mentales como consecuencia de la humillación que sufrió su pareja– el Dr. Vivaldi– al ser despedido de manera humillante y perder un empleo estable, además de "ella misma tener que enfrentarse con la incertidumbre

---

[3] La referida cláusula establecía lo siguiente:

> Si la INSTITUCIÓN revoca el contrato pasados los primeros tres (3) años de vigencia del primer término de cinco (5) años, LA INSTITUCIÓN tendrá que pagar a la Segunda Parte dos (2) años de salario y beneficios adicionales, excepto los gasto de representación.

que ello implica en su vida de pareja y las exigencias económicas de su diario vivir como pareja"[4]. Por ello la Sra. Ramírez reclamó una indemnización por las angustias mentales sufridas y por las represalias.

El 3 de abril de 2025, SUAGM presentó *Contestación a Querella*[5] en la que, en resumen, negó responsabilidad por las alegaciones de los recurridos y presentó sus defensas afirmativas. En igual fecha, SUAGM presentó una *Solicitud de Conversión a Procedimiento Civil Ordinario y para que se Dicte Sentencia Parcial Desestimando la Causa de Acción de la Concubina, Sra. Marie A. Ramírez Kauffmann.*[6] En esta, SUAGM expuso que ante la complejidad y circunstancias específicas del caso, se justificaba la conversión del procedimiento sumario a uno ordinario. Por otra parte, solicitó la desestimación de la causa de acción en daños instada por la Sra. Ramírez.

En síntesis, SUAGM adujo que el hecho que entre el Dr. Vivaldi y la Sra. Ramírez existiera una relación de concubinato, no daba paso a una causa de acción en daños como consecuencia de la terminación del contrato suscrito entre SUAGM y el Dr. Vivaldi; pues ésta era un tercero ajeno a dicho contrato. Alegó, que entre el Dr. Vivaldi y la Sra. Ramírez no existe una relación de parentesco y que no existe entre ellos una sociedad legal de gananciales. Añadió que la Sra. Ramírez no alegó una relación de codependencia económica ni que se beneficiara o dependiera de los ingresos del Dr. Vivaldi para subsistir. Por lo anterior, SUAGM solicitó se desestimara con perjuicio la causa de acción de la Sra. Ramírez, por entender que ésta no tiene derecho a remedio alguno.

---

[4] Véase, Apéndice del recurso, pág. 15 y 16, inciso (e).
[5] Apéndice del recurso, págs. 18-38.
[6] Apéndice del recurso, págs. 39-47.

Por su parte, los recurridos presentaron su oposición a la solicitud de desestimación de SUAGM. Arguyeron que aun cuando ya no existe un vínculo matrimonial entre ellos, éstos han sido pareja por cerca de 40 años, comparten un hogar juntos y tienen dos (2) hijos en común, por lo que existen lazos de parentesco, afecto y cariño entre ellos. Por ello, sostuvieron que la Sra. Ramírez tiene derecho a reclamar el resarcimiento por los daños sufridos como consecuencia del despido del Dr. Vivaldi. En dicho escrito, los recurridos se allanaron que el caso se tramitara por la vía ordinaria.

El 8 de mayo de 2025, el TPI emitió y notificó la *Resolución* recurrida en virtud de la cual declaró No Ha Lugar la solicitud de desestimación presentada por SUAGM y ordenó la conversión del caso a procedimiento ordinario.

Insatisfecho con el dictamen, SUAGM acude ante nos vía *certiorari* y formuló el siguiente señalamiento de error:

> Primer Error: Erró el Tribunal de Primera Instancia al no desestimar la acción y causas con respecto a la Sra. Kauffman cuando, aun dando por ciertas y correctas todas las alegaciones de la demanda, la codemandante no tiene derecho a remedio bajo ley alguna.

El 18 de junio de 2025, los recurridos, el Dr. José A. Vivaldi y Marie A. Ramírez Kauffman, presentaron *Oposición a Certiorari Civil.*

**II.**

**A.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[7]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[8] Ésta dispone que, el recurso

---

[7] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[8] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[9]

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención. Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[9] *Íd.*

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[10]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[11] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[12]

---

[10] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[11] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[12] *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular,* supra, pág. 155.

Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[13]

La discreción judicial se define como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera".[14] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[15] Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[16]

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción

> [...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[17]

### III.

En su recurso, SUAGM alega que el foro primario incidió al denegar la solicitud de desestimación de la reclamación de daños en cuanto la Sra. Ramírez. Lo anterior, por entender que esta no tiene derecho a remedio alguno, pues no fue parte del contrato suscrito entre la institución y el Dr. Vivaldi; y porque no cumple con el requisito de pariente para reclamar los daños sufridos por ésta ante el despido del Dr. Vivaldi.

---

[13] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[14] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657–658 (1997).
[15] *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular*, supra.
[16] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra, pág. 658.
[17] *SLG ZapataRivera v. J.F. Montalvo*, supra, citando a *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009)).

Luego de evaluar la petición de *certiorari,* concluimos que, aun cuando se recurre de la denegatoria de una moción de carácter dispositivo -asunto contemplado en los supuestos sujetos a revisión de la Regla 52.1 de Procedimiento Civil, *supra*- la solicitud de SUAGM no cumple con ninguno de los criterios de la Regla 40 del Reglamento de este Tribunal, *supra,* que amerite nuestra intervención en esta etapa de los procedimientos.

En su recurso, más allá de argumentar su desacuerdo con la denegatoria del tribunal a desestimar la causa de acción en cuanto a la Sra. Ramírez, SUAGM no ha demostrado que, al llegar a su determinación, el TPI hubiere incurrido en un error manifiesto, abuso de discreción, prejuicio o parcialidad. Por ello, como foro apelativo, no debemos de intervenir con tal ejercicio, salvo la presencia de un claro error, prejuicio o abuso de discreción.

Así pues, realizado el análisis bajo la Regla del Reglamento de este Tribunal, supra, no encontramos que, en su determinación, el TPI haya incurrido en un abuso de discreción o que este haya actuado con el prejuicio o en fracaso de la justicia. Tampoco se demostró que el tribunal se haya equivocado en la interpretación o aplicación de una norma procesal y que, intervenir en esta etapa, evitaría un perjuicio sustancial contra cualquiera de las partes.

Por tanto, en ausencia de los criterios de la Regla 52.1 de Procedimiento Civil, *supra,* o de alguno de los consignados en la Regla 40 de nuestro Reglamento, supra, nos abstenemos de intervenir con el dictamen recurrido.

**IV.**

Conforme a lo anteriormente expuesto, se deniega la expedición del auto de *certiorari.*

**Notifíquese inmediatamente.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones